# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE


STATE OF DELAWARE,      )
     )
     )
v.      )     **ID. No. 1310004227**
     )
     )     **Cr. A. No. IN13-10-1113**
VINCENZO TOLLIS,      )
     )
**Defendant.**      )


Submitted: November 16, 2015
Decided: January 4, 2016


## OPINION AND ORDER


*Upon Defendant, Vincenzo Tollis's, Motion for Sentence Modification*,
**DENIED**.


David H. Holloway, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for the State of Delaware.

T. Andrew Rosen, Esquire, Assistant Public Defender, Office of the Public Defender, Wilmington, Delaware, for Defendant Vincenzo Tollis.


**WALLACE, J.**

## I.  INTRODUCTION

Before the Court is Defendant VincenzoTollis'smotion for sentence modification.Tollis, who is serving a term of incarceration for first degree robbery, asks the Court to alter its sentencing order "to retain jurisdiction for possible modification at a later time" so that the Court might make "a determination at that time as to whether or not Tollis has earned some consideration for an earlier release date."[1]For the reasons stated below, Tollis'sapplication is **DENIED**.

## II.  PROCEDURAL BACKGROUND

In February 2015, Vincenzo Tollisentered into a plea agreement with the State through which he pleaded guilty to one count of Robbery in theFirst Degree.[2]He did so in exchange for dismissal of the remaining charges and a favorable sentencing recommendation (the State's withholding of a habitual criminal petition[3] and request for twelve years unsuspended imprisonment[4]).

---

[1]     *See* Def.'s. Supp. Ltr., at 1 (D.I. 54).

[2]     Plea Agreement and TIS Guilty Plea Form, *State v. Vincenzo Tollis*, ID No. 1310004227 (Del. Super. Ct. Feb. 25, 2015).

[3]     DEL. CODE ANN. tit. 11, § 4214(a) (2013) (providing that a person who has been thrice previously convicted of a felony and is thereafter convicted of another felony may be declared an habitual criminal offender; the Court may then, in its discretion, impose a sentence of up to life imprisonment for that or any subsequent felony).

[4]     *Id.* at §§ 832(a) and 4201(c) (2013) (robbery in the first degree is a violent class B felony); *id*. at §§ 4205(b)(2) & (d) (2013) (statutory maximum for a class B felony is up to 25 years imprisonment); *id*. at§ 4214(a) (any person sentenced under 11 *Del. C.* § 4214(a) must receive a minimum sentence of not less than the statutory maximum penalty otherwise provided for any fourth or subsequent title 11 violent felony that forms the basis of the State's habitual criminal petition).

His sentencing occurred a couple of months later, in April 2015, after a pre-sentence investigative report was prepared. Tolliswas sentenced to 25 years, suspended after he serves eight years imprisonment, for diminishing levels of supervision and intensive probation.[5]

Tollisfiled no direct appeal from his conviction or sentence. But the month after his sentencing, through counsel, he filed the present motion requesting modification of his sentence.[6]

In his initial motion, Tollis claimed "he has already been approved for the KEY program[7]something that [the Department of Correction ("DOC")] does not normally approve until an inmate is within 2 years of release," that he appeared to be "on an accelerated track for treatment and rehabilitation," and so a motion for reduction of sentence "may be meritorious in the future."[8]Further inquiry into this claim revealed that Tollis'sDOC risk assessment required that he be held at maximum security, that he could not even be considered for the Key Program with this high security status, "and [that he] was recommended to be screened for said

---

[5] Sentencing Order, *State v. Vincenzo Tollis*, ID No. 1310004227 (Del. Super. Ct. Apr. 14, 2015).

[6] Def.'s Mot. to Modify Sent. (D.I. 50).

[7] "'Key' refers to the Key Therapeutic Community, a six to eighteen month drug treatment program established by the Delaware Department of Correction." *State v. Lennon*, 2003 WL 1342983, at *1 (Del. Mar. 11, 2003).

[8] Def.'s Mot. to Modify Sent., at 1-2.

program at a later date."[9] He has asked, therefore, that the Court exercise its inherent authority and modify his sentencing order to "reflect that the Court will retain jurisdiction to modify the sentence based on completion of significant programming of treatment and rehabilitation."[10]

## III.  DISCUSSION

When addressing a sentence modification request, the Court first identifies the specific procedural mechanism the inmate attempts to invoke; it must then determine whether that mechanism is available under the circumstances.  Tollis moves this Court "for an [o]rder modifying the sentence imposed . . . pursuant to Superior Court Criminal Rule 35."[11] Within the motion he then invokes this Court's "inherent authority to modify a sentence, where a Judge, in his sentencing Order, reserves that authority to modify a sentence upon the occurrence of certain conditions."[12] So Tollis cites two distinct sources of authority under which the Court may modify a sentence: its statutory authority and its inherent authority.[13] But Tollis does little to address the requirements for the Court's exercise of either.

---

[9]     Def.'s Supp. Ltr., at 1 (D.I. 54).

[10]    Def.'s Mot. to Modify Sent., at 2.

[11]    *Id.* at 1.

[12]    *Id.* at 2 (quoting *State v. Sloman*, 886 A.2d 1257, 1265 (Del. 2005)).

[13]    *Sloman*, 886 A.2d at 1265; *State v. Johnson*, 2006 WL 3872849, at *3 (Del. Super. Ct. Dec. 7, 2006).

**NEITHER THIS COURT'S CRIMINAL RULE 35(b),NOR ITS LIMITED "INHERENT AUTHORITY" TO MODIFY SENTENCES,ALLOW IT TO ADMINISTER SOME FORM OF JUDICIALLY-CREATED PAROLE.**

The 1989 Truth-in-Sentencing Act completely eliminated parolefor crimes committed after its effective date.[14] Section 2 of that Act clearly articulated the General Assembly's purpose when it did so:

> To achieve truth in sentencing by assuring that the public, the State and the court will know that the sentence imposed by the court will be served by the defendant and that the defendant will know what the actual effect of the sentence will be.[15]

Those other provisions of law that regulate review and reduction of sentences of imprisonment must be read *in parimateria* with the Truth-in-Sentencing Act and interpreted in a manner consistent with their own express language and history.

**A. Superior Court Criminal Rule 35(b) is not a tool for opening a window to sentence diminution not otherwise available under the Rule's own terms.**

The purpose of Superior Court Criminal Rule 35(b) historically has been to provide a reasonable period for the Court to consider alteration of its sentencing judgments.[16] And the obvious intent expressed by Rule 35(b)'s language has always been to set a reasonable temporal limitation upon the Court's alteration of

---

[14]     *Evans v. State*, 872 A.2d 539, 554 (Del. 2005); *Crosby v. State*, 824 A.2d 894, 900 (Del. 2003).

[15]     67 Del. Laws c. 130, § 2 (1989).

[16]     *State v. Redden*, 111 A.3d 602, 606 (Del. Super. Ct. 2015).

those judgments and to prevent the Court from reducing a sentence imposed well before the application is made.[17] HenceRule 35(b) requires that an application to reduce imprisonment be filed promptly[18] – i.e. within 90 days of the sentence's imposition – "otherwise, the Court loses jurisdiction" to act thereon.[19]

Where a motion for reduction of sentence of imprisonment is filed within 90 days of sentencing, the Court has broad discretion to decide if it should alter its judgment.[20] "The reason for such a rule is to give a sentencing judge a second chance to consider whether the initial sentence is appropriate."[21] The Court has

---

[17]    *See Johnson v. State*, 234 A.2d 447 (Del. 1967) (*per curiam*) (interpretation of previous version of sentence reduction rule that had time limitation with no exceptions); *seealso* ABA STANDARDS FOR CRIMINAL JUSTICE: SENTENCING § 18-7.1 (3d ed. 1994) ("The rules of procedure should authorize a sentencing court, upon motion . . . to reduce the severity of any sentence. The rules should restrict the time for reduction in severity of a sentence to a specified period after imposition of a sentence.").

[18]    *See*, *e.g.*,R.I. Super. Ct. R. Crim. P. 35, historical note (1972) (noting such a provision is "intended to provide the court with an opportunity during a limited period after sentencing to exercise leniency in the event the court, for some reason, determines that the sentence imposed was unduly severe or a shorter sentence would be desirable").

[19]    *In re Nichols*, 2004 WL 1790142, at *1 (Del. Super. Ct. July 20, 2004). *See State v. Lewis*, 797 A.2d 1198, 1205 (Del. 2002) (Steele, J., dissenting) ("after 90 days . . . the judiciary may not consider [an inmate's plea for leniency] except where 'extraordinary circumstances' may have prevented the applicant from seeking the remedy on a timely basis"); *see also State v. Tinsley*, 928 P.2d 1220, 1223-24 (Alaska Ct. App. 1996) (explaining the time limitation in Alaska's then-extant rule exists so that trial court does not have nearly boundless continuing authority to reduce a defendant's sentence); *State v. Jensen*, 429 N.W.2d 445, 446-47 (N.D. 1988) (120-day time limitation is jurisdictional).

[20]    *Hewett v. State*, 2014 WL 5020251, at *1 (Del. Oct. 7, 2014) ("When, as here, a motion for reduction of sentence is filed within ninety days of sentencing, the Superior Court has broad discretion to decide whether to alter its judgment.").

[21]    *State v. Reed*, 2014 WL 7148921, at *2 (Del. Super. Ct. Dec. 16, 2014) (citing *United States v. Ellenbogen*, 390 F.2d 537, 541, 543 (2d Cir. 1968) (explaining time limitation and

-6-

limited that time to 90 days while permitting a certain restrained level of discretion to extend that period under the rule if a defendant demonstrates "extraordinary circumstances" for consideration outside the 90 days.[22] But "[i]n order to uphold the finality of judgments, a heavy burden is placed on the defendant to prove extraordinary circumstances when a Rule 35 motion is filed outside of ninety days of the imposition of a sentence."[23]

The term "extraordinary circumstances" is generally defined as "[a] highly unusual set of facts that are not commonly associated with a particular thing or event."[24] And in the Rule 35(b) context, "extraordinary circumstances" are those which "specifically justify the delay;" are "entirely beyond a petitioner's control;" and "have prevented the applicant from seeking the remedy on a timely basis."[25] Tollis files now so as to avoid any "extraordinary circumstances" analysis

---

purpose of then-extant sentence reduction provision of Federal Criminal Rule 35, the federal analogue to current Superior Court Criminal Rule 35(b))); *United States v. Maynard*, 485 F.2d 247, 248 (9th Cir. 1973) (Rule 35 allows sentencing court "to decide if, on further reflection, the original sentence now seems unduly harsh" such request "is essentially a 'plea for leniency'") (citations omitted); *Tinsley*, 928 P.2d at 1223 (under Alaska's then-extant 120-day rule court's "authority can be exercised even when there is no reason to reduce the sentence other than the judge's decision to reconsider and show mercy").

[22]     *State v. Lewis*, 797 A.2d 1198 (Del. 2002).

[23]     *State v. Diaz*, 2015 WL 1741768, at *2 (Del. Apr. 15, 2015); *State v. Remedio*, 108 A.3d 326, 332 (Del. Super. Ct. 2014).

[24]     *Diaz*, 2015 WL 1741768 at *2 (citing BLACK'S LAW DICTIONARY (10th ed. 2014)).

[25]     *Id.*; *Remedio*, 108 A.3d at 332.

required to overcome Rule 35(b)'s time-bar; this is because the grounds he alleges might eventually exist have been specifically and consistently rejected by Delaware's courts as adequate to qualify as "extraordinary circumstances" under Rule 35(b).[26]

When a timely Rule 35(b) motion is filed but cannot be acted upon within the 90-day deadline, this Court should retain jurisdiction only for a reasonable time beyond the 90-day time limit. Whether the Court's actions fall within"reasonable time" is determined by considering "whether the record shows a legitimate cause for the delay and whether that delay was reasonable in light of the rationales underlying the time limit."[27]Such a "reasonable time" rule is not a "'license to wait and reevaluate the sentencing decision in the light of subsequent

---

[26]    *See DeShields v. State*, 2012 WL 1072298, at *1 (Del. Mar. 30, 2012) ("This Court has held that participation in educational and rehabilitative programs, while commendable, does not, in and of itself, constitute 'extraordinary circumstances' for purposes of Rule 35(b)."); *Triplett v. State*, 2008 WL 802284, at *1 (Del. Mar. 27, 2008) ("While participation in rehabilitation programs is commendable, it is well-settled that such participation, in and of itself, is insufficient to merit substantive review of an untimely motion for sentence reduction."); *Allen v. State*,2002 WL 31796351, at *1 (Del. Dec. 11, 2002) (no "extraordinary circumstances" where  defendant maintained a commendable behavioral record and completed several educational and treatment programs); *State v. Redden*, 111 A.3d 602, 607-08 (Del. Super. Ct. 2015) (collecting cases and explaining reasons why rehabilitative efforts are not "exceptional circumstances" under Rule 35(b)); *State v. Liket*, 2002 WL 31133101, at *2 (Del. Super. Ct. Sept. 25, 2002) ("Exemplary conduct and/or successful rehabilitation do not qualify as extraordinary circumstances within the purview of Rule 35 and are insufficient grounds for supporting a Rule 35 reduction of sentence.").

[27]    *State v. Fisch*, 133 P.3d 1246, 1248-49 (Idaho Ct. App. 2006).

developments'"like an inmate's good behavior during his years of incarceration.[28]

Yet that isprecisely what Tollis would have the Court do in his case.Tollisattempts

what all too many Rule 35(b) applicants attempt—filing a timely Rule 35 motion

as a "placeholder" or "bookmark" for the Court to retain and exercise jurisdiction

over the life of his sentence.[29]SoTollis would have the Court not only reject the

express language and purpose of this Court's rules of criminal procedure[30] to

modify his sentence now,but would have the Court add to that the adulteration of

its "inherent authority" so it might later reduce that sentence.

### B.  Tollis's requested relief is inconsistent with this Court's rare exercise of its "inherent authority" to modify a sentence.

Again, Tollis is not asking for sentence reduction now.  He instead suggests

that the Court can modify his sentence *at a later date* by exercise of its "inherent

---

[28]     *Id.* (quoting *Diggs v. United States*, 740 F.2d 239, 246-47 (3d Cir. 1984)).

[29]     *See*, *e.g.*, *State v. Bayard*, Del. Super., ID No. 1501004820, Medinilla, J. (Dec. 30, 2015) (order denying placeholder Rule 35(b) motion); *State v. Johnson*,2006 WL 3872849 (Del. Super. Ct. Dec. 7, 2006) (noting the question of whether the Court can consider a timely filed motion to modify a sentence as a "bookmark" allowing the Court to consider circumstances that arise beyond Rule 35's 90-day deadline).

[30]     *See State v. Lewis*, 797 A.2d 1198, 1204 (Del. 2002) (Steele, J., dissenting) ("It seems obvious that the drafters intended to subject Rule 35 petitions to rational, workable time frames that could not be enlarged on an *ad hoc* basis. Indeed, I have difficulty believing that they anticipated an application of this Rule that would leave open any sentence for reconsideration indefinitely, restrained only by the discretion of whatever judge happened to be assigned a Rule 35 motion for relief, whether that judge had presided over the initial sentencing or not.").

authority to modify a sentence, where a Judge, in his sentencing Order, reserves that authority to modify a sentence upon the occurrence of certain conditions."[31] But this Court cannot "retain jurisdiction" via its "inherent authority" for the purpose of delaying decision on sentence reduction (even if a first Rule 35(b) motion is timely made), for an indefinite period of time, in contemplation of future events which may or may not occur. Such practice under sentence reduction regimes similar to Delaware's has been explicitly rejected[32] and is not at all consistent with this Court's limited "inherent authority" to reduce or modify its sentencing judgments.

A sentencing judge has the "inherent authority [independent of mechanisms provided for by court rule or statute] to modify [its] initial sentence *based on the terms of the original sentence itself.*"[33]The Court exercises its inherent authority

---

[31]    Def.'s Mot. to Modify Sent., at 2 (quoting *State v. Sloman*, 886 A.2d 1257, 1265 (Del. 2005)).

[32]    *See*, *e.g.*, *United States v. Taylor*, 768 F.2d 114, 116-18 (6th Cir. 1985) (listing cases); *Diggs v. United States,* 740 F.2d 239, 246-47 (3d Cir. 1984) (noting that Federal Rule 35(b) was meant to ensure that a district court had a temporally-limited opportunity to reconsider its sentencing decisions, not to be a tool for subverting the executive branch's parole power); *United States v. Stollings*, 516 F.2d 1287, 1289 (4th Cir. 1975); *Mamula v. People*, 847 P.2d 1135, 1137-38 (Colo. 1993) (trial court cannot be permitted "to hold timely motion for reduction of sentence in abeyance for months or years while the defendant builds a record of conduct within the department of corrections").

[33]    *Sloman*,886 A.2d at 1265 (emphasis added); *Johnson*, 2006 WL 3872849, at *3 (quoting *Sloman*).

over its original sentencing judgments only in rare circumstances.[34]For instance, where a sentencing court has included "ambiguous provisions in [its] original sentencing Order," the sentencing judge has the "inherent authority *to modify the initial sentence based on the terms of the original sentence itself*" to insure the original intent of the sentence is carried through.[35]

The Court's inherent authority over its sentencing judgments, however, "is not a ready path for circumnavigating this Court's procedural rules governing sentence reduction,"[36]this State's elimination of parole, or this State's statutory mechanisms for sentence diminution via good behavior or rehabilitative efforts.[37]And the requirements for its invocation and exercise must be adhered to strictly.[38]Tollis's and similar "placeholder" applications simply do not adhere to those several requirements.[39]

---

[34]     *State v. Remedio*, 108 A.3d 326, 330 (Del. Super. Ct. Dec. 31, 2014).

[35]     *Sloman*, 886 A.2d at 1265 (emphasis added).

[36]     *Remedio*, 108 A.3d at 330.

[37]     *See*, *e.g.*, DEL. CODE ANN. tit. 11, § 4381 (2013) (providing for reduction of prison term by earned good time); *id*. at § 4217 (providing for reduction of prison term upon DOC's application for good cause, which might include: rehabilitation of the offender, serious medical illness or infirmity of the offender and prison overcrowding).

[38]     *Remedio*, 108 A.3d at 330.

[39]     *See id.* (noting that among the numerous requirements for Court's exercise of its inherent authority is that "the sentencing judge must expressly reserve the authority to modify his or her sentence . . . upon the occurrence of a certain condition or conditions . . . and [ ] solely to ensure

Tollis asks the Court "to retain jurisdiction for possible modification at a later time" so that the Court might make "a determination at that time as to whether or not Tollis has earned some consideration for an earlier release date"[40] "based on completion of significant programming of treatment and rehabilitation."[41]In other words, Tollis asks the Court to monitor his sentence and release him upon some future potential happening by retaining jurisdiction throughout his incarceration.

Such an exercise is hardly the restrained exercise of this Court's recognized inherent authority to modify a sentence in certain rare or exceptional circumstances.[42]It is insteadasking the Court to engage in a form of judicial parole.

**C.A request for sentence reduction based on an inmate's claim of rehabilitation is properly addressed under title 11, section 4217.**

The Truth-in-Sentencing Act also enacted 11 *Del. C.* § 4217 – the statutory substitute for parole.[43] Under § 4217, the Court retains jurisdiction to reduce an

---

that the primary goal of the original sentence is preserved"); *State v. Johnson*,2006 WL 3872849, at *3 (Del. Super. Ct. Dec. 7, 2006).

[40]  *See* Def.'s Supp. Ltr., at 1.

[41]  Def.'s Mot. to Modify Sent., at 2.

[42]  *Remedio*, 108 A.3d at 330("But the exercise of that [inherent] authority [to modify a sentence] is exceptional, not routine.").

[43]  67 Del. Laws c. 130, § 16 (1989) (Section 4217 was first designated as 11 *Del. C.* § 4216).

incarcerative term of greater than a year.[44]Butfor the Court to reduce an inmate's sentence under § 4217, the Department of Correction must:apply to the Court on the inmate's behalf;demonstrate good cause for the reduction; and "certif[y] that the release of the defendant shall not constitute a substantial risk to the community or the defendant's ownself."[45]Cause to reduce an inmate's level of custody or time to be served via a § 4217 application includes "rehabilitation of the offender."[46] And so, claims like Tollis's– if they ever ripen – are properly addressed under title 11, section 4217.[47]

## IV. CONCLUSION

Tollis may not stitch together this Court's two distinct sources of sentence reduction or modification authority (*i.e.*, its statutory authority and its inherent authority) to fashion some form of judicially-supervised parole. Such a sentencing

---

[44] DEL. CODE ANN. tit. 11, § 4217(a) (2013); Super. Ct. Crim. R. 35(b) (expressly providing that the Court may reduce a sentence upon application made "pursuant to 11 *Del. C.* § 4217").

[45] DEL. CODE ANN. tit. 11, §§ 4217(b)-(c) (2013).

[46] *Id.* at § 4217(c).

[47] *Henry v. State*, 2009 WL 3286068, at *1 (Del. Oct. 13, 2009); *State v. Liket*, 2002 WL 31133101, at *2 (Del. Super. Ct. Sept. 25, 2002) ("[S]ince the purpose of 11 *Del. C.* § 4217 is to directly address modification of sentence based on a defendant's rehabilitation efforts, and 11 *Del. C.* § 4217 is included within the constructs of Rule (35), it is evident that 11 *Del. C.* § 4217 is the appropriate governing statute through which Defendant may be entitled to a reduction in his sentence based on rehabilitation."); *Ketchum v. State*, 2002 WL 1290900 (Del. June 10, 2002) (completion of numerous programs are such circumstances as might warrant court to instruct defendant to seek DOC's recommendation for 11 *Del. C.* §4217 relief).

judgment might, in fact, require the Court to consider the merits of *any* later sentence modification request Tollis makes.[48] This Court's Criminal Rule 35(b) and its occasional exercise of its inherent sentence modification authority are not meant to require the Court to continuously revisit any defendant's sentence throughout his or her period of imprisonment.Tollis'srequest that the Court engage in such long-term oversight of his sentence must be **DENIED**.

   **IT IS SO ORDERED.**

---

[48]   *E.g.*, *Jones v. State*, 2006 WL 3054633, at \*1 (Del. Oct. 17, 2006) (trial court erred in applying Rule 35(b) procedural bars when its original sentencing order expressly reserved authority to consider modification upon specific occurrence); *Layton v. State*, 2006 WL 1223121, at \*1 (Del. Apr. 24, 2006) ("Given the Superior Court's explicit retention of jurisdiction over Layton's sentence, we agree that it was an abuse of discretion for the Superior Court not to consider the merits of Layton's first motion for a sentence modification."). *Cf.* *Francis v. State*, 2006 WL 4459527 (Del. Dec. 22, 2006) (when this Court, in its original sentencing order, expressly invokes its inherent authority to retain jurisdiction to modify a sentence upon an occurrence, it must consider a sentence modification request upon that occurrence, but retains its sound discretion to grant or deny the modification then-requested).